DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from a judgment of the Toledo Municipal Court, which, on December 11, 2001, found defendant-appellant, Mohammed Eissa, guilty of violating Toledo Municipal Code 537.20(c), recklessly entering or remaining on premises which were the subject of a protection order issued pursuant to R.C. 3113.31.
The court sentenced appellant to pay a $1,000 fine, of which $500 was suspended; 180 days in jail, all of which were suspended; and two years of active probation.
 {¶ 2} Appellant appeals his conviction, and he asserts the following assignments of error:
 {¶ 3} "The judge's verdict was against the manifest weight of the evidence and contrary to law."
 {¶ 4} "The civil protection order issued and subsequently modified by the domestic relations court was void for vagueness, therefore misinterpreted by the trial court and therefore appellant's conviction was contrary to law."
 {¶ 5} Appellant and his wife, Marcia Eissa, are involved in a bitter divorce. On December 8, 2000, the Lucas County Court of Common Pleas, Domestic Relations Division, issued a civil protection order pursuant to R.C. 3113. 31. Under the terms of this order, appellant: "* * * shall not be present within 100 feet of [Marcia Eissa], and shall refrain from entering any place where [she] may be found. This includes, but is not limited to, the buildings, grounds, and parking lots of [her] residence, * * *."
 {¶ 6} The order further provides that any temporary visitation orders of the domestic relations court do not permit appellant to violate the terms of the protection order, and that the order is in effect until December 31, 2002. In addition, in capital, bold face letters, the protection order mandates: "Only the Court can change this order. The petitioner [Marcia Eissa] cannot give you permission to change this order. If you go near the petitioner, even with the petitioner's consent, you may be arrested. * * *."
 {¶ 7} At appellant's bench trial, Marcia Eissa testified that the following events occurred on the afternoon of Sunday, August 12, 2001. Marcia was sitting in the courtyard outside of her first floor apartment talking to a friend on her cell phone when she saw appellant walking toward her. Marcia quickly pressed the end button on her cell phone. Even though she yelled at appellant to get away and told him that she was calling the police, he just kept approaching. As Marcia started to dial 911, appellant grabbed her by the arm with one hand and grabbed the cell phone with his other hand. He threw the cell phone to the ground. Marcia jerked away from appellant and picked up the cell phone in order to call the police. However, the phone was in two pieces; therefore, Marcia ran screaming to her next door neighbors' apartment. One of the neighbors called emergency services for her. Appellant was only a few feet behind his wife and just stood there watching. Nonetheless, he left the scene before the police arrived.
 {¶ 8} Marcia testified that she did not know why appellant was at her apartment on August 12, 2001, that it was not a day for his regularly scheduled visitation with the parties' three children, and that she did not call appellant and tell him that he could pick up the children.
 {¶ 9} The neighbor, Lindsay Krill, confirmed that Marcia appeared at her patio door on August 12, 2001, that Marcia was hysterical, and that she asked Krill and her boyfriend to call 911. According to Lindsay, she let Marcia into the apartment, and her boyfriend dialed 911 for her. Lindsay stated that Marcia had a cell phone in her hand but that the phone appeared to be in two pieces. Lindsay identified appellant as the individual "walking along the sidewalk that runs between our two buildings."
 {¶ 10} Appellant's version of the incident differed from his wife's. He claimed that Marcia called him and told him that he could pick up the couple's three children for visitation. Appellant admitted that he was on the sidewalk outside of Marcia's apartment. He asserted that she came out of the patio door of the apartment yelling, "What are you doing over here? Get out of here. Get out of here; you're not supposed to be here." Appellant maintained that Marcia pushed him and/or hit him with her cell phone. She then turned and ran, screaming for someone to call 911. Appellant believed that he was "set up" by his wife.
 {¶ 11} In his defense, appellant offered a February 28, 2001 consent judgment issued by the domestic relations court. Among other things, the judgment sets forth the conditions the parties are required to follow when appellant exercises his right to visitation with his children. One of these conditions is that Marcia stay in her residence when appellant picks up the children. Appellant asserted that Marcia violated the terms of the visitation order by coming out of her apartment; thus, she was the aggressor.
 {¶ 12} In his second assignment of error, appellant contends that the temporary protection order as" modified" by the February 28, 2001 judgment regarding visitation is "void for vagueness." Therefore, appellant concludes that the trial court misinterpreted the vague orders. We thoroughly disagree with the premise that the subsequent visitation order somehow modified the civil protection order.
The civil protection order of December 8, 2000 was issued pursuant to R.C. 3113.13(E)(1) to protect the specific persons named therein. The specific persons named in the protection order are Marcia Eissa and Rocky Ybarra, Marcia's sixteen year old son from a previous relationship. As set forth above, the court expressly directed that any visitation orders do not permit a violation of the requirement that appellant stay 100 feet away from Marcia on the grounds of her premises. The February 28, 2001 judgment contains nothing indicating that the court intended to modify the terms of the civil protection order as it relates to Marcia Eissa. Rather, the conditions that the parents must follow in effecting visitation apply only to visits between appellant and his children made pursuant to the visitation schedule[1] ordered by the domestic relations court. For all of these reasons, we find that the February 28, 2001 judgment regarding visitation does not affect the mandates of the civil protection order or render its terms "vague." Appellant's second assignment of error is found not well-taken.
 {¶ 13} In his first assignment of error, appellant argues that the judge's verdict is against the manifest weight of the evidence.
 {¶ 14} In determining whether a verdict is against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and "* * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387. In a case tried to the bench, we apply these principles to the court as the factfinder instead of the jury. State v.Fisher, 6th Dist. No. L-02-1041, 2002-Ohio-7305 at ¶ 7.
 {¶ 15} Toledo Municipal Code 537.20(c) provides that "no person shall recklessly enter or remain on the land or premises which is the subject of a temporary protection order issued * * * pursuant to R.C.3113.31. Under Toledo Municipal Code 501.08, "a person acts recklessly, when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature."
 {¶ 16} Appellant again relies on the February 28, 2001 domestic relations court judgment to support the proposition that the evidence failed to demonstrate beyond a reasonable doubt that he recklessly violated the civil protection order. Appellant claims that he was acting in a reasonable manner under the visitation order in exercising what he believed to be an agreed upon visitation with his children. We disagree.
 {¶ 17} The evidence on the question of whether appellant was present on the grounds near Marcia's apartment for the purpose of visitation with his children is in conflict. Nevertheless, even if we were to find that appellant's version of the events on August 12, 2001 was credible, that is, Marcia called appellant and told him that he could pick up the children for visitation, we conclude that the evidence offered at trial proved, beyond a reasonable doubt, that appellant violated Toledo Municipal Code 502.20(c). Appellant knew that the civil protection order barred him from coming within 100 feet of Marcia Eissa on the grounds of her residence. He also knew of the risk of arrest if he disregarded the terms of the protection order under any circumstances, including visitation with his children. By entering the grounds outside of Marcia's apartment, and undisputedly within 100 feet of Marcia, appellant displayed a heedless indifference to the consequences of his actions. We are therefore of the opinion that the trial judge, in resolving conflicts in the evidence before her, did not clearly lose her way and create such a manifest miscarriage of justice that her judgment must be reversed. Accordingly, appellant's first assignment of error is found not well taken.
 {¶ 18} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Toledo Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal.
 JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J., Mark L. Pietrykowski, J., and Judith AnnLanzinger, J., CONCUR.
[1] According to Marcia, this visitation schedule was on Wednesdays and on alternate weekends from 7:00 p.m. on Friday to 7:00 p.m. on Sunday. Appellant did not dispute this schedule.